# UNITED STATES DISTRICT COURT

## District of Kansas
### (Kansas City Docket)

UNITED STATES OF AMERICA,

          Plaintiff,

        v.                      CASE NO. <u>12-20139-DDC</u>

ROBERT DOBBERTIN,

          Defendant.

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
### (Doc. 39)

APPEAR NOW the United States of America, by and through Jared S. Maag, Assistant United States Attorney, and respectfully submit the following in response to the defendant's motion for compassionate release:

## I.   <u>PROCEDURAL HISTORY</u>

April 15, 2013, the defendant entered a guilty plea to one count of enticement of a minor, in violation of 18 U.S.C. § 2422(b).   (Doc. 25, Plea Agrmt. at 1-11.)

On July 22, 2013, the defendant was committed to the custody of the Bureau of Prisons to be imprisoned for a term of 120 months.   (Doc. 30, Judgment at 2.)

On July 7, 2020, the defendant filed the instant motion seeking compassionate release from his remaining term of imprisonment.   (Doc. 39, Mot. for Release at 1-20.)

The defendant's earliest possible release date from the Bureau of Prisons is August 7, 2021.

II.    ARGUMENT

The defendant maintains that he is a proper candidate for compassionate release on grounds that he "suffers from a combination of serious health ailments, including obesity, Type II diabetes, and hypertension, which place him at the highest-risk category for serious illness or death if (and when) he is infected by COVID-19."   (*Id.* at 1.)

The government objects to the defendant's motion for compassionate release and submits the following in support of its position that the scope and nature of the defendant's crime wholly justified the sentence imposed in this case and is by itself sufficient reason to deny the motion.   Moreover, as demonstrated below, the Section 3553(a) factors weigh heavily against the

2

defendant's release from incarceration.

### A.   Defendant's Obligations

The defendant is burdened with demonstrating that circumstances exist warranting this Court's consideration of compassionate release. *See United States v. Rodriguez-Orejuela*, --- F.Supp.3d ---, 2020 WL 2050434, at *5 (S.D. Fla. Apr. 28, 2020) (noting that under the CARES Act / Section 3582(c) framework the defendant bears the burden of establishing that compassionate release is warranted); *United States v. Holden*, --- F.Supp.3d ---, 2020 WL 1673440, at *3 (D. Ore. Apr. 6, 2020) (noting that "[a] defendant seeking a reduction in his terms of imprisonment bears the burden to establish both that he has satisfied the procedural prerequisites for judicial review and that compelling and extraordinary reasons exist to justify compassionate release."); *United States v. Epstein*, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020) (Slip Op.) ("Simply put, under the FSA, a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release.").[1]

---

[1] To the extent the defendant seeks release to home-confinement that request must be rejected.   Under the CARES Act, Pub. L. 116-136, Mar. 27, 2020, 134 Stat. 281, § 12003(b)(2), this Court has no authority to place the defendant on home-confinement.   That

Here, the defendant falls short of fully satisfying the requirements for compassionate release under 3582(c)(1)(A)(i).   Thus, for the following reasons, this Court must overrule his motion and deny the requested relief.

B.    BOP's Response to the COVID-19 Pandemic[2]

As this Court is well aware, COVID-19 is an extremely dangerous illness that has caused many deaths in the United States in a short period of time resulting in disruption to our society and economy.   In response to the

---

responsibility lies exclusively with the Director of the Bureau of Prisons.   *United States v. Nash*, 2020 WL 1974305, at *3 (D. Kan. Apr. 24, 2020) (Slip Op.) (". . . the court lacks authority to order home confinement under the CARES Act."); *See also, United States v. Serfass*, 2020 WL 1874126, at *3 (M.D. Penn. Apr. 15, 2020) (Slip Op.) (". . . the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director.); *United States v. Black*, 2020 WL 2213892, at *1 (S.D. Ohio, May 7, 2020) (Slip Op.) ("The BOP has the sole authority to decide whether home confinement under the CARES Act is appropriate."); *United States v. Daniels*, 2020 WL 1938973 at *1-2 (N.D. Ala. Apr. 22, 2020) (Slip Op.) (similarly holding that only the BOP has the authority to place a defendant on home confinement under the CARES Act); *United States v. Boyd*, 2020 WL 2106023, at *1 (E.D. Tenn. May 1, 2020) (Slip Op.) ("The CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons. Courts therefore do not have power to grant relief under Section 12003 of the CARES Act.") (internal citations omitted).   Thus, should the Court construe the defendant's request as one for home-confinement, such a request must be summarily denied.

[2] It should again be noted that the Attorney General has directed the BOP to prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 under the CDC risk factors—particularly those at institutions where there have been COVID-19 outbreaks—and BOP is devoting all available resources to executing on that directive.   Additionally, BOP is devoting all available resources to assessing the inmate population to determine which inmates would be appropriate for transfer under this priority program and to then process those inmates for transfer as quickly as possible.

pandemic, BOP has taken significant measures to protect the health of the inmates in its charge.

As of this pleading, BOP has **130,187 federal inmates** in BOP-managed institutions and **13,714** in community-based facilities. The BOP staff complement is approximately 36,000.   There are **2,666 federal inmates** and **248 BOP staff** who have confirmed positive test results for COVID-19 nationwide. Currently, **5,137 inmates** and **603 staff** have recovered.   There have been **94 federal inmate deaths** and **1 BOP staff member death** attributed to COVID-19 disease.[3]

The current modified operations plan is stated in full at https://www.bop.gov/coronavirus/covid19_status.jsp.   Taken together, these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution.   BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately and inevitably some inmates have become ill, and more likely will in the weeks ahead.   But BOP must consider its concern for the health

---

[3] https://www.bop.gov/coronavirus/ (last visited 10 July 2020).

of its inmates and staff alongside other critical considerations.   For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public.   It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry.   It must marshal its resources to care for inmates in the most efficient and beneficial manner possible.   It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times.   And it must consider myriad other factors, including the availability of both transportation for inmates (at a time that interstate transportation services often used by released inmates are providing reduced service), and supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

   C. <u>Legal Framework</u>

   Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his term of imprisonment.   Before filing that motion, however, the defendant must first request that BOP file such a motion on his behalf pursuant to Section 3582(c)(1)(A).   A court may grant the defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal

a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, as it is here, (Doc. 39-3), a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *See* Section 3582(c)(1)(A)(i).   Again, as the movant, the defendant bears the burden to establish that he is eligible for a sentence reduction.  *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under Section 3582(c)(1)(A).   As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the Section 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community,

as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement."   U.S.S.G. § 1B1.13.[4]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i).   Second, the standard is met if the defendant is:

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

---

[4] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under Section 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the government submits that the policy statement applies to motions filed by defendants as well.

U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).   The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances.   U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).   Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons."   U.S.S.G. § 1B1.13, cmt. n.1(D).

> D.   Extraordinary and Compelling Reasons

As explained above, under the relevant provision of Section 3582(c), a court can grant a sentence reduction *only* if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."   Section 3582(c)(1)(A)(i).   The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions.   U.S.S.G. § 1B1.13, cmt. n.1(A).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition, the defendant first must establish that his condition(s) fall(s) within one of the categories listed in the policy statement.   Those categories include, as particularly relevant here, (i) any terminal illness, and (ii)

any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."   U.S.S.G. 1B1.13, cmt. n.1(A).   If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his motion must be denied.

Importantly, the mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction.   The categories encompass specific serious medical conditions afflicting an individual inmate, *not* generalized threats to the entire population.   As the Third Circuit recently held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745 at *2 (N.D. Cal. Mar. 25, 2020) (Slip Op.) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing

Commission as required by § 3582(c)(1)(A).").[5]  To classify COVID-19 as an

extraordinary and compelling reason would not only be inconsistent with the

text of the statute and the policy statement, but would be detrimental to BOP's

organized and comprehensive anti-COVID-19 regimens, could result in the

scattershot treatment of inmates, and would undercut the strict criteria BOP

employs to determine individual inmates' eligibility for sentence reductions and

---

[5]  *See also, e.g.*, *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied
for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889
(E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020);
*United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old
with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr.
13, 2020) (two insider trading defendants with less than a year to serve have no risk factors);
*United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view,
the mere *possibility* of contracting a communicable disease such as COVID-19, without any
showing that the Bureau of Prisons will not or cannot guard against or treat such a disease,
does not constitute an extraordinary or compelling reason for a sentence reduction under the
statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020);
*United States v. Fuentes*, 2020 WL 1937398 (E.D. Cal. Apr. 22, 2020); *United States v. Singh*,
2020 WL 1937437 (E.D. Cal. Apr. 22, 2020) (62-year-old with no ailments); *United States v.
Spruill*, 2020 WL 2113621, at *4-5 (D. Conn. May 4, 2020); *United States v. Harris*, 2020 WL
1969951 (M.D. Fla. Apr. 24, 2020); *United States v. Garcia*, 2020 WL 2039227 (C.D. Ill. Apr.
28, 2020) (the court broadly holds that the risk of infection to an inmate is not a circumstance
within § 1B1.13, which is binding); *United States v. Wright*, 2020 WL 1976828, at *5 (W.D.
La. Apr. 24, 2020) ("The Court stresses that the rampant spread of the coronavirus and the
conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of
extraordinary and compelling circumstances. Rather, those circumstances are applicable to
all inmates who are currently imprisoned and hence are not unique to any one person. The
Court cannot release every prisoner at risk of contracting COVID-19 because the Court would
then be obligated to release every prisoner."); *United States v. Hiller*, 2020 WL 2041673 (D.
Md. Apr. 28, 2020) (being over age 65 insufficient); *United States v. Espinal*, 2020 WL 2092484
(E.D.N.Y. May 1, 2020); *United States v. Hood*, 2020 WL 2091070 (W.D.N.C. Apr. 30, 2020);
*United States v. Stanard*, 2020 WL 2219478, at *4 (W.D. Wash. May 7, 2020) (not justified by
"the mere elevated risk of contracting a pandemic virus in prison, even if such a higher risk
exists.") (citation omitted); *United States v. Pao Xiong*, 2020 WL 2042776 (E.D. Wis. Apr. 28,
2020).

home confinement.   Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, *not* the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A).   If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,[6] that condition may satisfy the standard of "extraordinary and compelling reasons."   Under these circumstances, a chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19.   U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Recently, the Department of Justice has, consistent with the Centers for Disease Control (CDC), identified certain risk factors that place inmates at

---

[6] *See* Centers for Disease Control, *At Risk for Severe Illness*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last modified Apr. 2, 2020).

higher risk of complications from COVID-19.[7]  Thus, an inmate that presents with one of the named CDC factors, as confirmed by medical records, and who is not expected to recover from that condition, is deemed to have established an extraordinary and compelling reason allowing for compassionate release under Section 3582(c)(1)(A) and the guideline policy statement as detailed in U.S.S.G. Section 1B1.13.   In other words, a specified and confirmed chronic medical condition presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that the inmate's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished, within the environment of a correctional facility, by the chronic condition itself.[8]

---

[7] The factors include the following: asthma (moderate to severe); chronic kidney disease being treated with dialysis; chronic lung disease, such as chronic obstructive pulmonary disease (COPD) (including emphysema and chronic bronchitis), idiopathic pulmonary fibrosis, and cystic fibrosis; diabetes, including type 1, type 2, or gestational; hemoglobin disorders, such as sickle cell disease and thalassemia; immunocompromised, including from cancer treatment, bone marrow or organ transplantation, immune deficiencies, HIV with a low CD4 cell count or not on HIV treatment, and prolonged use of corticosteroids and other immune weakening medications; liver disease, including cirrhosis; serious heart conditions, including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension; and severe obesity, defined as a body mass index (BMI) of 40 or above.

[8] District courts have generally stated that a defendant's medical condition "must be one of

Additionally, as part of its analysis of the totality of circumstances, the Court should consider whether the inmate is more likely to contract COVID-19 if he is released than if he remains incarcerated.   That will typically depend on the inmate's proposed release plan and whether a known outbreak has occurred at his institution.

The defendant has proposed a release plan that will provide living arrangements with family friends.   (Doc. 39-3 at 3-4.)

The Bureau of Prisons presently shows that Milan FCI has 7 confirmed positive cases of COVID-19, 3 deaths as a result of COVID-19, and 90 inmate recoveries.

Nevertheless, given the defendant's current medical state, the government is constrained to concede that he presents a series of medical conditions that qualify as extraordinary and compelling circumstances for this Court's consideration of a sentence reduction.   The defendant's medical records confirm a current state of health that includes hypertension, hyperlipidemia,

_____

substantial severity and irremediability." *United States v. Lisi*, 2020 WL 881994, at \*4 (S.D.N.Y. Feb. 24, 2020); *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (relief is "rare" and "extraordinary"); *United States v. Polnitz*, 2020 WL 1139836, at \*2 (E.D. Wis. Mar. 9, 2020) (condition must be extraordinary; "Many inmates suffer from pain and mental illness.")

morbid obesity and Type-II diabetes.   Yet, for the following reasons, this Court should not endeavor to reward the defendant with early release.

        E.    <u>Section 3553(a) Factors</u>

To the extent that a defendant can establish an extraordinary and compelling reason for release based upon a confirmed and documented medical condition, satisfying that burden does not resolve the defendant's entitlement to a reduction in sentence or release from confinement.   This Court must still consider whether the defendant poses a danger to the community and other relevant factors under Section 3553(a) before making the ultimate decision on release.   Accordingly, this Court must consider (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants.   *See* 18 U.S.C. § 3553(a)(1)–(6)).

Applying the Section 3553 factors here strongly favor against reducing the defendant's sentence to time-served.   Without question, a reduction to time-served would run counter relative to the nature and seriousness of his offense

15

and the need for this particular sentence to provide just punishment and promote respect for the law.   *See, e.g.*, *United States v. Moskop*, 2020 WL 1862636 (S.D. Ill. Apr. 14, 2020) (72-year-old inmate "has suffered or suffers from various acute and chronic conditions including depression, high blood pressure, high cholesterol, an enlarged prostate, hearing loss, kidney disease, bleeding on the brain, and mental deterioration," but has served less than half of a 240-month sentence for serious fraud, and is at no particular enhanced risk from COVID-19); *United States v. Logan*, 2020 WL 730879 (W.D. Ky. Feb. 13, 2020) (81-year-old defendant is eligible for consideration, as he suffers from prostate cancer, glaucoma, blindness, diabetes, and other medical conditions, and has served more than 22 years of his life sentence; but relief is denied because reducing the defendant's sentence "would minimize the nature and seriousness of the offense," which involved arson of a hotel resulting in four deaths); *United States v. Arana*, 2020 WL 2214232 (E.D. Mich. May 7, 2020) (defendant's health is declining due to pancreatitis; has served 24 years of life sentence for drug offenses and murder; denied due to nature of offenses); *United States v. Chambliss*, 948 F.3d 691 (5th Cir. 2020) (affirming district court's denial of compassionate release to terminally ill defendant serving 30 year sentence for drug trafficking).

The seriousness of the defendant's crimes and potential continued

dangerousness as an online sexual predator simply cannot be understated.   To be sure, the record demonstrates that the defendant engaged in significant on-line activity which involved him enticing girls as young as 12 years old to perform various sexual acts.   (Doc. 28, PSIR at 4-5, ¶¶ 10-15.)   Related child pornography was discovered on the defendant's computer.   (*Id.* at 5, ¶ 12.) The impact that the defendant's crimes had on the victims is well-documented in the PSIR as well.   (*Id.* at 5-10, ¶¶ 16-23.)

While the defendant meets the present standards of consideration for release, his medical conditions ultimately do not outweigh the gravity of his crimes and the need for continued incarceration.   *Cf. United States v. Willis*, 382 F. Supp. 3d 1185, 1188–89 (D.N.M. 2019) (compassionate release not warranted for blind, wheelchair-bound defendant who required round-the-clock medical care and had a life expectancy of 18 months, given severity of his wire fraud).   Stated otherwise, the defendant's release would prove to be profoundly unjust, and such an order would otherwise fall remarkably short of demonstrating respect for the law. And, again, releasing the defendant undervalues the gravity and seriousness of the crimes that he committed.   *Cf. United States v. Webster*, --- F.Supp.3d ---, 2020 WL 618828, at *8 (E.D. Va. Feb. 10, 2020) (rejecting terminally ill defendant's compassionate release motion on

grounds that "allowing this twice-convicted murderer to walk free before he has completed his sentence would be unjust to his victims and the public at large").

In the end, denying the defendant's motion will uphold the public's faith—and the victims' trust—in our system of justice and provide the necessary balance that is ultimately deserving in this case.   Thus, given that the applicable 3553(a) factors do not weigh in favor of the defendant's request for compassionate release, his arguments must be rejected and his motion denied.

III.   CONCLUSION

For the foregoing reasons, the government respectfully moves this Court to deny the defendant compassionate release and in turn dismiss his motion.

Respectfully submitted,

STEPHEN R. McALLISTER
United States Attorney
District of Kansas

By:   /s/   *Jared S. Maag*

JARED S. MAAG, KS Bar No. 17222
Assistant United States Attorney
District of Kansas
290 Carlson Federal Building
444 SE Quincy Street
Topeka, KS 66683
Ph: 785.295.2850 (Office)
Fax: 785.295.2853
jared.maag@usdoj.gov

18

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July, 2020, I electronically filed the foregoing Response with the Clerk of the Court by using the CM/ECF system and that a copy of the same was delivered electronically to:

Kathryn Stevenson
Katie_Stevenson@fd.org


By: _____ /s/ *Jared S. Maag* _____

JARED S. MAAG, Ks. Bar. No. 17222
Assistant United States Attorney

19