**In the United States District Court
for the District of Kansas**

---

**United States of America**,
    *Plaintiff*,

v.                                               Case No. 12-CR-20139-001-DDC

**Robert Dobbertin,**
    *Defendant*.

---

**Reply to Government's Response to Mr. Dobbertin's
Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A)(i)**

---

The government opposes Mr. Dobbertin's motion for compassionate release. But, importantly, the government agrees that Mr. Dobbertin has exhausted administrative remedies, and that this motion is properly before the Court.[1] The government also agrees that because of COVID-19, Mr. Dobbertin "presents a series of medical conditions that qualify as extraordinary and compelling circumstances for this Court's consideration of a sentence reduction."[2] And the government does not dispute that the Court has the authority to reduce Mr. Dobbertin's sentence below the mandatory-minimum prison sentence he received.[3]

The government suggests that the Court should factor Mr. Dobbertin's risk of contracting COVID-19 if released compare to his risk of contracting COVID-19 at

---

[1] Docket Entry (D.E.) 42 at 7.

[2] D.E. 42 at 14-15.

[3] *See* D.E. 39 at 14.

FCI Milan.[4] And in so doing, the government appears to agree that Mr. Dobbertin is at risk at FCI Milan.[5] Indeed, the government neither contests that FCI Milan has been one of the epicenters of the COVID-19 pandemic within BOP, nor that Mr. Dobbertin is at a significantly elevated risk of contracting COVID-19 in BOP,[6] especially when compared to his release plan.[7] Nor does the government contest that Mr. Dobbertin's release plan would helpfully (1) avoid his transfer from FCI Milan where there is a known COVID-19 outbreak to another communal-living BOP facility (halfway house) come February 2021, (2) avoid Mr. Dobbertin having to rely on BOP or public transportation, and (3) permit him to quarantine for 14 days immediately upon release from FCI Milan.

Nevertheless, the government asserts that the factors set forth in Section 3553(a) weigh against Mr. Dobbertin's release.[8] The government points to the nature and seriousness of Mr. Dobbertin's offense, but fails to acknowledge that Mr. Dobbertin has served the vast majority of his sentence. Indeed, the government cites only persuasive authority where courts denied compassionate release to defendants who had served less than half of their sentences or were otherwise

---

[4] D.E. 42 at 14.

[5] *Id.*

[6] *See* D.E. 39 at 7-9.

[7] D.E. 39 at 18; *see also* D.E. 39-3 at 3-4.

[8] D.E. 42 at 15-18.

serving life sentences.[9] Mr. Dobbertin is not serving a life sentence, and he did not receive a death sentence. Courts around the country have granted compassionate release to individuals who are vulnerable to COVID-19 and were convicted of similar, serious offenses.[10]

Likewise, the government's passing assertion that Mr. Dobbertin's potential "dangerousness as an online sexual predator" is also unpersuasive. Mr. Dobbertin remains subject to a five-year term of supervised release, and is required to register as a sex offender.[11] If Mr. Dobbertin violates the conditions, his supervised release could be revoked, and he could be sentenced to a prison term longer than the term

---

[9] D.E. 42 at 15-16.

[10] *See, e.g., United States v. Deleon*, 16-cr-670, D.E. 305 (S.D.N.Y. May 17, 2020) (granting compassionate release to defendant convicted of conspiracy to commit sex trafficking of minors, finding "the seriousness of Defendant's offense [] obvious" but that "under the circumstances, releasing Defendant early would not materially undermine the goals of just punishment and general deterrence, particularly when balanced against the significant risk to Defendant"); *United States v. Pippin*, 16-cr-266, D.E. 122 (W.D. Wash. May 20, 2020) (granting compassionate release to medically-vulnerable defendant who admitted to sending images of his genitals to minors and who was convicted of possessing over 7,000 images of child pornography, including minors under the age of twelve, where it was not his first sexually-related offense, but recognizing that defendant is not violent and has no history of inappropriate physical contact with anyone); *United States v. Scholler*, 17-cr-181 (N.D. Cal. May 15, 2020) (granting compassionate release to medically-vulnerable defendant charged with attempted coercion and enticement of a minor and convicted of attempting to transfer obscene material to a minor, finding that "[a]lthough defendant's crime was a serious one" measures including offender registration and supervised release conditions are sufficient to safeguard against any threat he may pose to the community); *United States v. Fischman*, 16-cr-246, D.E. 76 at 4 (N.D. Cal. May 1, 2020) (granting compassionate release to defendant convicted of possessing child pornography and who is vulnerable to COVID-19, noting that defendant's "offense, though very serious, was his first"); *United States v. Sawicz*, 08-cr-287, D.E. 66 at 7 (E.D.N.Y. April 10, 2020) (acknowledging that "possession of child pornography is a serious offense and that the defendant has already once violated the conditions of a term of supervised release" but finding "these considerations do not justify keeping the defendant in prison amidst an outbreak of a potentially deadly virus to which he is particularly vulnerable."); *United States v. Dillard*, 15-cr-170, D.E. 71 (D. Idaho April 27, 2020) (granting compassionate release to defendant convicted of possession and access with intent to view child pornography where defendant had serious health issues that makes him vulnerable to COVID-19).

[11] D.E. 28 at ¶86.

he has left to serve on his current sentence. Moreover, the government does not acknowledge the significant work Mr. Dobbertin has done towards self-improvement over the last eight years while in BOP custody, or the fact that he has remained clear of any disciplinary conduct during that time.[12] Attached hereto is the Certificate of Completion and Memorandum discussing the curriculum and goals of the most recent 18-month BOP Life Connections Program that Mr. Dobbertin completed in June 2020.[13] For the 500 hour community-service requirement, Mr. Dobbertin stated he volunteered many of those hours assisting disabled prisoners in getting around the facility, and tutoring prisoners in college courses. And in addition to the notable number of BOP courses Mr. Dobbertin has completed, Mr. Dobbertin has also continually sought personal improvement through higher education, obtaining his Associate's Degree in Theology from Titus Baptist Seminary in 2016, and thereafter commencing coursework to obtain his Master of Theological Studies from Nations University.[14]

---

[12] D.E. 39 at 17; *see also* D.E. 39-1 (Progress Report); *see, e.g., Fischman*, 16-cr-246, D.E. 76 at 4 (granting compassionate release to individual convicted of possessing child pornography and who is vulnerable to COVID-19, recognizing it was defendant's first offense and that "[d]uring his time in federal custody, [defendant] has taken steps to rehabilitate himself, including through successful completion of [BOP programming]" and that he "also teaches classes, leads reading groups, and leads religious services").

[13] Exhibit 1.

[14] Exhibit 2.

Lastly, the government does not address that the Court may order Mr. Dobbertin to serve the remainder of his prison sentence on home confinement via supervised release. Other courts in the District of Kansas have found such home-confinement arrangements to be appropriate when a prisoner is at risk of severe illness from COVID-19, and is held in a facility that has been a hotspot for outbreak.[15] The government does not explain why this proposal would not adequately address the sentencing factors should the Court feel such additional time is necessary, while also protecting Mr. Dobbertin from COVID-19 inside BOP.

Mr. Dobbertin's physical and medical conditions, his resulting risk of severe illness and increased risk of mortality from COVID-19, and the conditions at FCI Milan warrant his request for a reduction of his sentence to time served.

## Conclusion

For all these reasons, in addition to the reasons stated in the motion for a sentence reduction, the Court should reduce Mr. Dobbertin's sentence to time served.

---

[15] *See, e.g., United States v. Leal*, No. 12-cr-20021-KHV, D.E. 415 at 6-7 (reducing defendant's 151-month sentence to time served, and imposing a special term of supervised release for 31 months (the remaining term of defendant's prison term) where defendant was vulnerable to COVID-19); *United States v. Plank*, No. 2:17-cr-20026-JWL. D.E. 62 at 6-9 (reducing defendant's 144-month sentence to time served even though he had nine years left, extending term of supervised release, and adding a term of home confinement, finding that "[a]ny remaining disparity between defendant's modified sentence and that received by similar offenders is outweighed in this case by the risk to defendant from continued incarceration [due to COVID-19].").

Respectfully submitted,

s/ Kathryn Stevenson
Kathryn Stevenson KS #27120
Assistant Federal Public Defender
117 SW Sixth Avenue, Suite 200
Topeka, Kansas 66603
Phone: 785-232-9828
Fax: 785-232-9886
Email: Katie_Stevenson@fd.org
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2020, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Jared Maag
Assistant United States Attorney
Jared.Maag@usdoj.gov

s/ Kathryn Stevenson
Kathryn Stevenson, KS #27120