## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 12-20139-01-DDC |
| ROBERT DOBBERTIN (01), | |
| Defendant. | |

### MEMORANDUM AND ORDER

This matter comes before the court on prisoner Robert Dobbertin's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 39).  Mr. Dobbertin asserts he has served 89 months of his 120-month custody sentence.  *Id.* at 1.  He seeks a sentence reduction to time served because of the COVID-19 pandemic.  *Id.*  The government has responded (Doc. 42) and Mr. Dobbertin has filed a Reply (Doc. 43).  For reasons explained below, the court denies Mr. Dobbertin's motion.

### I.      Background

In November 2012, a grand jury returned a two-count Indictment charging Mr. Dobbertin with (1) use of a facility of interstate commerce (a computer and the internet) to entice a minor to engage in sexual activity, and (2) possession of child pornography.  Doc. 1 at 1–2.  These charges, if proved beyond a reasonable doubt, would violate 18 U.S.C. §§ 2422(b) and 2252(a)(4)(B).  *Id.*  About four months later, Mr. Dobbertin entered into a plea agreement with the government.  Docs. 24 & 25.  He pleaded guilty to using a computer and the internet to entice a minor.  Doc. 24 at 1.  The Presentence Investigation Report ("PSR") calculated a total offense level of 31 and a criminal history category of I, producing a Guidelines sentencing range of 108

to 135 months' imprisonment. Doc. 28 at 16 (PSR ¶ 77). But the statute—18 U.S.C. § 2422(b)—prescribed a 120-month minimum sentence, so the PSR adjusted the sentencing range to 120 to 135 months' imprisonment. *Id.* On July 26, 2013, the court sentenced Mr. Dobbertin to 120 months' imprisonment, followed by five years of supervised release. Doc. 30 at 2–3 (Judgment). This 120-month custody sentence represented the minimum sentence allowed by federal statute.

Mr. Dobbertin asserts that he currently is incarcerated at FCI Milan. Doc. 39 at 1. He asserts that FCI Milan has had over 150 positive COVID-19 cases and three deaths. *Id.* He contends he "suffers from a combination of serious health ailments, including obesity, Type II diabetes, and hypertension" placing him in "the highest-risk category for serious illness or death if (and when) he is infected by COVID-19[.]" *Id.* Mr. Dobbertin contends he has served 89 months (or 86%) of his sentence. *Id.* at 17. And that he is scheduled for release to a halfway house in February 2021, and for release from Bureau of Prisons' custody on August 7, 2021. *Id.* at 2.

## II.    Legal Standard

Binding authority from our Circuit establishes that a "'district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'" *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)). Title 18 U.S.C. § 3582(c)—commonly called the compassionate release statute—permits a court to modify a term of imprisonment but only if certain exceptions apply. For many years, these exceptions required the Bureau of Prisons ("BOP") to bring a motion on a defendant's behalf. But in 2018, the First Step Act modified the compassionate release statute, and authorized a defendant to file

his own motion for relief.  First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194 (2018).  This amendment authorized an inmate to make such a motion, but only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A).

Mr. Dobbertin asserts he has exhausted his BOP remedies because he submitted a request to his warden on June 3, 2020, and more than 30 days have elapsed.  Doc. 39 at 10.  The government concedes that Mr. Dobbertin has exhausted his administrative remedies.  Doc. 42 at 7; Doc. 39-3 (Mr. Dobbertin's request to warden for compassionate release because of COVID-19 dated June 3, 2020).  The government does not argue

Some courts have concluded § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional. *See, e.g.*, *United States v. Walker*, No. 13-10051-EFM, 2020 WL 2101369, at *2 (D. Kan. May 1, 2020) ("The administrative exhaustion requirement is jurisdictional and cannot be waived."); *United States v. Read-Forbes*, No. 12-20099-01-KHV, 2020 WL 1888856, at *3–4 (D. Kan. Apr. 16, 2020) (deciding that exhaustion requirement is jurisdictional based on text, context, and relevant historical treatment of § 3582(c)'s various subsections).  But, as explained next, other courts have concluded § 3582(c)(1)(A)'s exhaustion requirement is a claim-processing rule and not jurisdictional.  The court adopts the claim-processing approach.

In *United States v. Alam*, 960 F.3d 831 (6th Cir. 2020), the Sixth Circuit treated § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule, not a jurisdictional bar.  *Id.* at 832–34.  Although claim-processing rules don't implicate the court's subject matter jurisdiction, the court must enforce them when properly invoked.  *Id.* at 833.  But, if not invoked, claim-processing rules are subject to waiver and forfeiture.  *Id.* at 834; *see also United States v.*

*Spaulding*, 802 F.3d 1110, 1130–34 (10th Cir. 2015) (Gorsuch, J., dissenting) (explaining why "§ 3582(c) doesn't strip the district court of any of its preexisting post-judgment jurisdiction and is instead and again a claim-processing rule").

The Tenth Circuit hasn't yet decided whether § 3582(c)(1)(A)'s exhaustion requirement is jurisdictional. So, the court must predict how our Circuit would decide the question. The court finds the Sixth Circuit's decision highly persuasive and the court predicts the Tenth Circuit would adopt its reasoning. Consistent with *Alam*, the court treats § 3582(c)(1)(A)'s exhaustion requirement as a claim-processing rule.

Because Mr. Dobbertin waited 30 days after asking his warden to file a motion in federal court, he has satisfied the exhaustion requirement of § 3582(c)(1)(A). And, even if he hasn't, the government explicitly has waived any objections to the exhaustion requirement. So, the court now turns to the substance of Mr. Dobbertin's motion.

### III.   Discussion

#### A.  The court exercises its discretion when deciding whether "extraordinary and compelling reasons" exist.

Section 3582(c)(1)(A) authorizes district courts to reduce a term of imprisonment if, "after considering the factors set forth in Section 3553(a) to the extent that they are applicable," the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement is found in U.S.S.G. § 1B1.13. *United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019). As pertinent here, this policy statement provides that the court may reduce a term of imprisonment, after considering the § 3553(a) factors, if (1) "[e]xtraordinary and compelling reasons warrant the reduction," (2)

"[t]he defendant is not a danger to the safety of any other person or the community," and (3) "[t]he reduction is consistent with this policy statement."  U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 provides that extraordinary and compelling reasons exist "under any of the [four] circumstances set forth below" in (A) through (D).  *Id.* § 1B1.13 application notes 1.  Subdivision (A) of Note 1 provides that the medical condition of a prisoner may qualify him for compassionate release, if (i) he is suffering from a terminal illness, or (ii) he is suffering from a serious physical or medical condition that "substantially diminishes" his ability to provide self-care within the prison and he is not expected to recover.  *Id.* § 1B1.13 application notes 1(A).  Subdivisions (B) and (C) apply to age and family circumstances not invoked here.  Subdivision (D) supplies a catchall provision:  it applies when "[a]s determined by the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  *Id.* § 1B1.13 application notes 1(D).

Mr. Dobbertin plainly does not qualify under two of the four subdivisions in Note 1.  He is not 65 years old (Subdivision (B)) and nothing suggests that the "family circumstances" addressed in Subdivision (C) apply.   He also does not qualify under either of the two prongs described in Subdivision (A).  Nothing suggests Mr. Dobbertin "is suffering from a terminal illness"—prong (i)—or, as prong (ii) requires, that he has contracted a "serious physical or medical condition" and he "is not expected to recover from" it.[1]  § 1B1.13 application notes 1(A).

---

[1]     Prong (ii) also applies to "serious functional or cognitive impairment" and "deteriorating physical or mental health because of the aging process."  § 1B1.13 application notes 1(A)(ii).  Mr. Dobbertin's motion does not invoke these alternatives.

This leaves Subdivision (D). The guidance in this subsection advises that § 1B1.13 applies when "[a]s determined by the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" of application note 1.[2] *Id.* § 1B1.12 application notes 1(D).

A few courts have ruled that only the BOP may invoke the catchall provision of subdivision (D). *United States v. Jackson* summarized the reasoning of one such decision:

> Congress gave the Sentencing Commission the mandate to decide what constitutes an extraordinary and compelling reason; the [First Step Act] did not expand the criteria for finding such a reason, but merely allowed defendants to file motions; there can be no relief under this statute without consistency with the policy statement; and the policy statement does not presently provide for a court determination of other reasons.

*United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020) (citing *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019)). But an "overwhelming majority of courts" have rejected this approach. *Id.* Instead, they have "concluded that a court may make the necessary determination that other circumstances warrant relief under this statute." *Id.* (citations omitted). In other words, "[w]hile the old policy statement provides helpful guidance, it does not constrain the [c]ourt's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Beck*, 425 F. Supp. 3d at 579; *see also Jackson*, 2020 WL 2812764, at *3 (assuming, for purposes of deciding the motion, that court is not limited to circumstances set forth in subdivisions (A) through (C)); *United States v. O'Bryan*, No. 96-

---

[2]     As explained above, in Section II, § 3582 used to permit the BOP—but not inmates—to file a compassionate release motion. But the First Step Act broadened § 3582, so an inmate now can file a motion. *See* First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194 (2018). The Sentencing Commission hasn't revised § 1B1.13 of the Guidelines since that amendment and so, the language used in this Guidelines provision still requires a motion by the BOP. *See United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *3 (D. Kan. May 29, 2020).

10076-03-JTM, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) ("In the wake of the First Step

Act, numerous courts have recognized the court can determine whether extraordinary and

compelling reasons exist to modify a sentence—and may do so under the 'catch all'

provision . . . ."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (concluding

that the correct interpretation of § 3582(c)(1)(A) is that when a defendant brings a motion for a

sentence reduction under the amended provision, the court can determine whether extraordinary

and compelling reasons—outside those delineated in subdivisions (A)–(C)—warrant granting

relief).

     The court joins this prevailing view, concluding that it may decide whether

"extraordinary and compelling reasons" warrant compassionate release.

      **B.   Mr. Dobbertin has not established that "extraordinary and compelling reasons" warrant compassionate release.**

     Mr. Dobbertin contends he "has multiple 'serious' chronic conditions that make him high

risk for serious illness or death should he contract COVID-19." Doc. 39 at 15.  He is obese,

which he argues is "'one of the most important predictors of severe coronavirus illness.'" *Id.* at

3 (quoting Roni Caryn Robin, *Obesity Linked to Severe Coronavirus Disease, Especially for

Younger Patients*, The New York Times (Apr. 17, 2020), https://www.nytimes.com/2020/04/16

/health/coronavirus-obesity-higher-risk.html).  He also has Type II diabetes and hypertension,

conditions he asserts place him at heightened risk for severe COVID-19 complications, should he

contract the virus. *Id.* at 4–5.

     Mr. Dobbertin also reports the conditions at FCI Milan are "poor" and contribute to the

extraordinary and compelling circumstances he contends entitle him to relief. *Id.* at 7.  He

asserts that "93 inmates and 57 staff have tested positive for COVID-19" and three inmates have

died from the virus. *Id.* at 8.

The government concedes that Mr. Dobbertin's medical conditions "qualify as extraordinary and compelling circumstances for this [c]ourt's consideration of a sentence reduction." Doc. 42 at 14. But, the government argues, Mr. Dobbertin's medical conditions don't "outweigh the gravity of his crimes and the need for continued incarceration." *Id.* at 17.

To be sure, it is regrettable that Mr. Dobbertin is incarcerated during this pandemic. It is also regrettable that he is obese and suffers from Type II diabetes and hypertension. But the court isn't convinced that the combination of these conditions qualifies him for release. The court reaches this conclusion "after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent they are applicable"—the rubric § 3582(c)(1)(A) instructs the court to follow. Four of those statutory sentencing factors are particularly germane here. The next four paragraphs discuss them.

### 1.  Nature and Circumstances of the Offense[3]

In 2008 and 2009, Mr. Dobbertin fostered an online relationship with S.W.—a 12-year-old girl. Doc. 28 at 4 (PSR ¶ 10). Mr. Dobbertin sent S.W. explicit messages, requested explicit photos of S.W., and sent S.W. explicit photos of himself. *Id.* S.W. met Mr. Dobbertin on a website called "Teenspot.com." *Id.* at 5 (PSR ¶ 11). Mr. Dobbertin later admitted his Teenspot.com profile falsely reported his age as 21. *Id.* (PSR ¶ 13). Mr. Dobbertin and S.W. "would talk sexually to one another over the phone and engage in masturbation." *Id.* (PSR ¶ 11). A search warrant executed at Mr. Dobbertin's home revealed explicit videos of minors and Yahoo Messenger chat conversations between Mr. Dobbertin and S.W. in which he told S.W. he wanted to come visit her and engage in sexual intercourse with her. *Id.* (PRS ¶ 12). Mr.

---

[3]      The facts discussed in parts 1–4 come from the PSR, which Mr. Dobbertin did not object to in any respect. Doc. 28 at 21 (PSR ¶ 114).

Dobbertin also admitted to fostering a similar relationship with another underage girl—D.G. *Id.* (PSR ¶ 15). To conclude with the obvious, Mr. Dobbertin committed a serious felony offense involving minor victims. The nature and circumstances of this offense do not favor Mr. Dobbertin's motion.

### 2. History and Characteristics of the Defendant

Before this offense, Mr. Dobbertin had no criminal history. *Id.* at 12 (PSR ¶ 41). He holds a psychology degree from Northwestern Missouri State University, and an education degree from the University of Nebraska-Kearney. *Id.* at 14 (PSR ¶¶ 60–61). During his incarceration, Mr. Dobbertin reports, he has completed the BOP Life Connections Program and completed 500 community service hours helping disabled prisoners and providing tutoring services to prisoners taking college courses. Doc. 43 at 4. He also has earned two more degrees: an associate degree in theology from Titus Baptist Seminary and Master of Theological Studies from Nations University. *Id.* These accomplishments are commendable, and they favor Mr. Dobbertin's request.

### 3. The Need for the Sentence to Reflect the Offense's Seriousness, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct

When the court sentenced Mr. Dobbertin, it was constrained to the sentence prescribed in 18 U.S.C. § 2422(b)—"not less than 10 years or for life." The court imposed the shortest available sentence, but, in context, Mr. Dobbertin received an appropriate sentence.

Reducing that sentence would produce a sentence that no longer reflects the seriousness of Mr. Dobbertin's criminal conduct. Likewise, such a reduced sentence no longer would furnish adequate deterrence to criminal conduct or provide just punishment. These factors weigh against Mr. Dobbertin's motion.

### 4.   The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant

Reducing Mr. Dobbertin's sentence to the time he has has served so far would reduce it below the applicable statutory minimum penalty.  Some district courts have concluded the court has discretion to depart from mandatory-minimum sentence in the compassionate release context.  *See, e.g.*, *United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585, at *11–12 (W.D. Pa. May 29, 2020) ("In the context of a compassionate-release motion, however, the [c]ourt is permitted to consider whether the § 3553(a) factors warrant a lower sentence, even if the original sentencing judge could not." (citations omitted)).  The court need not decide whether the compassionate release statute authorizes a sentence below the mandatory minimum sentence to resolve the current motion.  For even if the court agreed with the holding in *Somerville*, it still would not reduce Mr. Dobbertin's sentence.[4]

### C.  Conclusion

In sum, the pertinent sentencing factors in 18 U.S.C. § 3553(a) do not favor the reduction Mr. Dobbertin's motion seeks.  Indeed, the primary factor favoring his request is the fact that he regrettably suffers from Type II diabetes, hypertension, and obesity.  The court recognizes that these conditions have the potential to increase the severity of the sentence beyond the 120 months already imposed.  *United States v. Mel*, No. CR TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("The fact that Mel has been incarcerated . . . during a serious outbreak of COVID-19 inside the facility sufficiently increased the severity of the sentence beyond what was originally anticipated . . . .").  But these factors haven't increased the sentence's severity to the point where an 89-month custody sentence is sufficient.

---

[4]      The court is mindful of the other factors identified by § 3553(a).  They are not pertinent, however, to the current motion.

The court recognizes that Mr. Dobbertin has served a substantial portion of his sentence. It also recognizes that he has taken advantage of the educational and rehabilitation opportunities available to him.  The court commends Mr. Dobbertin's efforts.  Nevertheless, the court is not prepared to accept that Mr. Dobbertin's medical conditions provide sufficient reason for his release under § 3582(c)(1)(A).  The court thus denies Mr. Dobbertin's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 39).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Dobbertin's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 39) is denied.

**IT IS SO ORDERED.**

**Dated this 29th day of July, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
